IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK G. RAGAN, Petitioner, | : | |
| v. | : | CIVIL ACTION No. 00-2092 |
| MARTIN HORN, et al., Respondents. | : | |

**February _10th___, 2009** **Anita B. Brody, J.**

**EXPLANATION AND ORDER**

Petitioner moves for modification of my Judgment denying his petition for a writ of habeas corpus. For the following reasons, I find that Ragan's petition is time-barred because he did not act with reasonable diligence after the extraordinary circumstances preventing his filing had resolved.

## I. Background

On March 6, 2008, I issued a Memorandum and Order (Doc. #78) holding that Derrick Ragan ("Ragan") had filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition").[1] I was advised by both parties that my decision rested on the erroneous finding of law that Ragan's Petition was deemed filed on the date that Ragan filed a motion to proceed in forma pauperis ("IFP"). On June 24, 2008, I issued an Amended Memorandum and

[1] Ragan was convicted in June 1991 of the shooting death of Anthony Thomas. The significance of this habeas petition is that the underlying conviction served as the sole aggravating circumstance leading to Ragan's sentence of death after he was convicted of a second homicide in 1992.

Order (Doc. #82) (hereinafter, the "Amended Order"), holding that Ragan's petition was time-barred because, under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), the relevant date for statute-of-limitation purposes is the date the actual habeas petition was filed, April 21, 2000, rather than the date the petitioner filed for IFP status, February 7, 2000.

On July 7, 2008, Ragan filed a second motion pursuant to Fed. R. Civ. P. 59(e) to modify the judgment (Doc. #83) (the "Motion"). In his Motion, Ragan argues that the court committed two legal errors in its Amended Order: first, that the court failed to properly consider whether the Petition was filed within a reasonable period of time after the extraordinary circumstances justifying equitable tolling had disappeared, and second, that the court failed to consider whether Ragan's claim of actual innocence entitles him to equitable tolling. I consider both arguments in turn. I will also consider Ragan's request for a certificate of appealability.

## II. Discussion

### A. Reasonable Diligence

The one-year statute of limitations applicable in this case under AEDPA started running on April 24, 1996. The statute was tolled during the pendency of a Post Conviction Relief Act ("PCRA") petition that was filed in Pennsylvania state court on December 10, 1996, and was denied on June 28, 1999. On August 12, 1999, Ragan hired a private attorney to file his federal habeas petition. Ragan was subsequently abandoned by his attorney while he was diligently pursuing his rights. Based on the egregious acts of Ragan's attorney, I found that "extraordinary circumstances" existed to warrant equitable tolling. (Amended Order at 12.) The grounds for equitable tolling existed from August 12, 1999, until January 10, 2000, the date when Ragan realized that his attorney had forsaken him and he reached out to the Capital Habeas Unit of the

Federal Defenders (the "Defenders") for legal assistance. (Amended Order at 12.) In my Amended Order, based on the 90 days that remained in the statute of limitations as of August 12, 1999, I held that Ragan should have filed his Petition within 90 days of January 10, 2000, that is, by April 10, 2000. (See Table 1 at Appendix A). I now find that the reasoning behind this calculation was wrong. A grant of equitable tolling, unlike statutory tolling, does not shift the deadline so that each day of tolling results in a one day postponement of the deadline. Phillips v. Heine, 984 F.2d 489, 492 (D.C. Cir. 1993). Rather, once the "extraordinary circumstances" justifying equitably tolling have disappeared, the petitioner must file as soon as is "reasonably possible." Walker v. Frank, 56 Fed. Appx. 577, 581-82 (3d Cir. 2003) (not precedential) ("[I]n situations in which equitable tolling initially applies, a party must file suit within a reasonable period of time after realizing that such a suit has become necessary."); Knight v. Schoefield, 292 F.3d 709 (11th Cir. 2002) ("After all statutory and equitable tolling periods are concluded, [the petitioner] should be given a reasonable time to file his federal habeas corpus motion."); Phillips, 984 F.2d at 492 ("The purposes of the doctrine [of equitable tolling] are fully achieved if the court extends the time for filing by a reasonable period after the tolling circumstance is mended.").

The extraordinary circumstances justifying equitable tolling in Ragan's case dissipated on or about January 10, 2000, when Ragan became aware of his predicament and secured alternative legal representation.[2] (Amended Order at 12.) Having already found that extraordinary

[2] The Amended Order erroneously held that January 10, 2000 marked the date that the petitioner ceased to be "diligent." (Amended Order at 7-8.) Ragan contacted the Federal Defenders in "early 2000" which demonstrates diligence in pursuing his habeas claims, at least as of January 10, 2000. (Amended Order at 12.) Therefore, January 10, 2000 is not the date that Ragan ceased to be diligent, but the date that the extraordinary circumstances were resolved.

circumstances prevented Ragan from filing his Petition before January 10, 2000, I must now determine whether the approximately 102 days[3] it took him to file it constitutes reasonable diligence under the circumstances.[4]

Ragan has the burden of demonstrating that his diligence continued throughout the period of equitable tolling sought. Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004) ("To qualify for [equitable tolling], the petitioner must establish that extraordinary circumstances prevented him from filing his petition on time, and that he acted with reasonable diligence throughout the period he seeks to toll."). The tolling period must be "sufficient to permit the filing of a petition on or before the earliest date after the [extraordinary circumstances] by which that petitioner, acting with reasonable diligence, should have filed his or her petition." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000). Courts are urged to remember that "[t]he standard is not 'extreme diligence' or 'exceptional diligence,' it is *reasonable* diligence. . . . [and when evaluating reasonable diligence] the district court should ask: did the petitioner act as diligently as reasonably could have been expected *under the circumstances*?" Baldayaque v. U.S., 338 F.3d 145, 153 (2d

---

[3] Ragan submits that his Petition was filed within 99 days of January 10, 2000. (Pet'r's Reply Br. 3.) The court's calculation is that the Petition was filed within 102 days of January 10, 2000. However, this discrepancy is irrelevant as my holding would not be different as between 99 and 102 days in this case.

[4] Ragan requests an evidentiary hearing on what was necessary for counsel in order to prepare this petition in light of its staffing and caseload at the time, the work that had to be done to re-create the file and record of the case, the investigation that was conducted, the hours spent reviewing the record, and the legal research that had to be done. (Pet'r's Reply Br. 12.) The parties have had ample opportunity to brief this issue and I find that an evidentiary hearing is unnecessary. Valverde v. Stinson, 224 F.3d 129, 135 (2d Cir. 2000) (remanding to the district court to develop a record on reasonable diligence but noting that "the district court, in its discretion, may utilize any of the habeas rules designed to supplement the record without the necessity of conducting a full-blown evidentiary hearing").

Cir. 2003) (emphasis in original). Reasonable diligence is required even where the extraordinary circumstances involve attorney incompetence, as they do in this case. In other words, the act of retaining an attorney does not absolve Ragan of his responsibility for overseeing the attorneys' conduct or the preparation of the petition. Doe, 391 F.3d at 175.

Because reasonable diligence is a fact-specific inquiry, courts have reached widely different conclusions as to what constitutes reasonable diligence. See Lytle v. McDaniel, 184 Fed. Appx. 595, 596 (9th Cir. 2006) (finding petitioner diligent in attempting to obtain his file from his attorneys such that a 56 day delay in filing a petition after receiving his file was reasonable); Brambles v. Duncan, 330 F.3d 1197, 1204 (9th Cir. 2003) (holding that taking 85 days to exhaust state remedies and return to federal court was reasonable diligence); Smith v. Ratelle, 323 F.3d 813, 815 (9th Cir. 2003) (granting equitable tolling for a petition filed 93 days late); Knight, 292 F.3d at 712 (holding that petitioner entitled to equitable tolling "should have been granted a reasonable time of one year. . . to file his federal motion"). But see Smith v. McGinnis, 208 F.3d 13, 17-18 (2d Cir. 2000) (finding no circumstances to warrant equitable tolling in the first instance but also stating that filing federal habeas petition 87 days after the state denied collateral relief did not demonstrate reasonable diligence); Melancon v. Kaylo, 259 F.3d 401, 408 (5th Cir. 2001) (waiting over four months to file habeas petition was not expedient enough to warrant equitable tolling); Fisher v. Johnson, 174 F.3d 710, 715-16 (5th Cir. 1999) (rejecting equitable tolling where prisoner had over six months to complete federal habeas petition after the termination of extraordinary circumstances, but noting that if his period of incapacity had "occurred shortly before the required filing, [petitioner] would have a stronger case").

Ragan submits the following in support of his claim of reasonable diligence:

- The Defenders were new to the facts and circumstances of Ragan's particular case. Therefore, in order to file a competent petition, the Defenders had to investigate his case from inception, both legally and factually, and it took time to acquire the necessary information, including transcripts of prior proceedings from prior counsel, police reports, prior investigation reports, and additional documents. (Pet'r's Reply Br. 9.)
- Ragan also contends that it took time to track down the sole testifying witness produced by the Commonwealth in this case to determine what his testimony would be if a hearing were granted. (Id. at 10.) Ragan's search was not fruitless: Ragan did obtain new evidence from this witness which he has proffered in support of his actual innocence claim. (Id. at 13.)
- This was a complex case involving time-consuming legal issues, as evidenced by the fact that the Commonwealth took over 400 days to respond to the petition, requesting 6 separate enlargements of time. (Id. at 10.)
- Ragan argues that there would have been no point in submitting anything less than a fully complete petition, as any amendments that did not relate back to the initial petition would have been untimely as well. U.S. v. Duffus, 174 F.3d 333, 337 (3d Cir. 1999) (permitting amendment of habeas petition after the statute of limitations had run would "frustrate the intent of Congress that claims under 28 U.S.C. § 2255 be advanced within one year after a judgment of conviction becomes final").
- Because this case is the sole aggravating circumstance underlying Ragan's death sentence, the investigation and presentation of this case was "literally a life-or-

death situation" that required more work than the average habeas petition. (Pet'r's Reply Br. 9.)

- Ragan filed for IFP status on February 7, 2000. This filing is evidence of Ragan's continued diligence in pursuing his claims in federal court.
- During this period the Defenders actually prepared and submitted two habeas petitions on Ragan's behalf - for both his capital and non-capital cases. (Id. at 6).[5] 102 days is a reasonable amount of time for the Defenders, attorneys whose heavy case load includes nearly all death penalty inmates in Pennsylvania, to file two simultaneous habeas petitions, starting from scratch. (Id. at 10.)

District courts are cautioned to be sparing in their use of equitable tolling. Lacava v. Kyler, 398 F.3d 271, 275 (3d Cir. 2005). The hardships Ragan cites are common to what all petitioners filing habeas corpus petitions face, and nothing Ragan has submitted on the issue of reasonable diligence justifies making him the exception. All told, Ragan has had nearly four years to file his habeas petition in federal court. He had 365 days on April 24, 1996, and allowed 230 of those days to lapse without activity, until December 10, 1996, when he filed for relief under the PCRA in state court. When his PCRA petition was denied on June 28, 1999, Ragan allowed another 45 days of his excludable time to expire before he hired an attorney, leaving only 90 days

[5] The statute of limitations had not yet run on Ragan's capital case. However, because his capital case sentence hinged on this case, Ragan argues that it made sense in terms of judicial economy to prepare and present both petitions, for the capital and non-capital cases, to this Court together. (Pet'r's Reply Br. 7.) However, this argument cuts both ways. The decision to work on both petitions simultaneously was made by Ragan - it was not a requirement of the court. It could be argued that it was not reasonably diligent for Ragan to spend time preparing two petitions simultaneously when one case was not in danger of being untimely and the other case was of much more pressing importance.

left in the statute of limitations. While the subsequent behavior of Ragan's attorney was censurable, it does not absolve Ragan of his ultimate responsibility as the petitioner to pursue his habeas rights with attentiveness and assiduity. For the following reasons, I find that Ragan has simply failed to demonstrate reasonable diligence in pursuing his habeas rights:

- On February 9, 2000, when IFP status was granted, the court issued an order allowing counsel to file a habeas petition within 60 days of that order. (Doc. #3 in docket no. 00-16, transferred to Doc. #5 in docket no. 00-2092). Despite this generous grant of time (to which Ragan could have objected at the time if he thought it was an unrealistic deadline), Ragan carelessly disregarded the deadline and did not file his Petition until nearly two weeks later, 72 days after he received in forma pauperis status.
- After Ragan's experience with his prior attorney, there is no excuse for Ragan's failure to ensure that his new attorneys were complying with court deadlines. Doe, 391 F.3d at 175.
- Ragan submits that it took time to obtain the documents he needed to file his Petition. The problems that he encountered of missing documents and waiting for discovery are common in habeas cases, which often stretch back over several years involving multiple stages of litigation and multiple attorneys. These problems are not sufficiently unique to warrant special consideration in this case.
- Ragan had previously filed a PCRA petition in state court. This filing contained the same prosecutor misconduct and ineffectiveness of counsel allegations that are the primary claims in the Petition ultimately filed. Thus, Ragan had enough

information to go forward with his habeas petition despite missing some documents. See Walker v. Artuz, No. 98-2572, 2002 WL 34243994, at *3 (2d Cir. 2002) (holding that ten months was not reasonable diligence, "particularly given the fact that the claims he raised in that petition had been exhausted in his direct appeal and, thus, were available to him at the time the first petition was dismissed").

- Furthermore, Ragan undercuts the alleged importance of filing a complete petition by admitting that, even after waiting over 100 days, he still "filed the petition even before his file was complete." (Pet'r's Reply Br. 9.) Cf. Brigian v. Artuz, 37 Fed. Appx. 559, No. 01-2389, 2002 WL 1333491, at *2 (2d Cir. 2002) (not published) (holding that even though petitioner had been actively trying to get his papers back from his attorney, petitioner was not reasonably diligent where he eventually filed his petition without the papers anyway, two years after the deadline).
- Ragan argues that it would have been pointless to file an incomplete petition because, as the statute of limitations had already run, he would not have been permitted to amend his petition. Duffus, 174 F.3d at 337 (denying right to add additional claims to motion after statute of limitations had passed). However, Duffus does not "go so far as to suggest that the district court could not have permitted any amendment of the motion after [the statute of limitations]." Id. Specifically, the court "could have permitted an amendment to clarify a claim already made." Id. Certainly by the April 10th deadline, Ragan already knew

which claims he could bring. Further delay on the basis that he might have been missing something is not reasonable diligence at this stage of proceedings.

- Although the Defenders were new to Ragan's case, these attorneys specialize in providing legal representation to criminal defendants, including preparing habeas petitions under AEDPA. 102 days is an unreasonable amount of time for the Defenders to file a habeas petition under the circumstances of this case. At the time that the Defenders agreed to take Ragan's case, Ragan was aware that the statute of limitations had already passed. (Pet'r's Reply Br. 11.) There was no guarantee that the court would even consider Ragan's tolling arguments, but if there was going to be any chance at all, it was imperative that Ragan act with greater haste than was used here.
- Equitable tolling applies "in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice." U.S. v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998). Ragan argues that because this case is the sole aggravating circumstance underlying his death sentence, and given the grave attorney misconduct that has put Ragan in his present position, the interests of justice demand that equitable tolling be granted. (Pet'r's Reply Br. 16.) However, even if I were to give this case consideration as a capital case, a "death sentence does not change the test we apply to determine if equitable tolling is warranted." Rouse v. Lee, 339 F.3d 238, 256 (4th Cir. 2003); Herrera v. Collins, 506 U.S. 390, 405 (1993) (holding that claims of actual innocence are not grounds for habeas relief even in a capital case and noting that "we have 'refused to hold that the fact that a

death sentence has been imposed requires a different standard of review on federal habeas corpus'"). Thus, despite the seriousness of his sentence, Ragan must be held to the same standard of reasonable diligence as any petitioner seeking review.

- Ragan further argues that because this case underpins his death-qualifying sentence, it required more time than the average habeas petition. That may be so, but that does not mean the time it took was reasonable. In fact, it is precisely the urgency and importance of this filing that makes it incomprehensible that Ragan waited over 100 days to submit his Petition.

In light of the circumstances described above, I hold that Ragan did not exercise reasonable diligence in filing his habeas petition 102 days after the extraordinary circumstances preventing his filing had been removed. "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." Valverde, 224 F.3d at 134. Ragan failed to use reasonable diligence in filing his Petition. Therefore, I can not equitably toll the statute of limitations in Ragan's favor and I must deny the Petition as untimely.

B. Claim of Actual Innocence

Ragan also argues that his claim of actual innocence forms a basis for a grant of equitable tolling. The Circuits are split on this issue.[6] The Circuits that have not yet ruled on the issue,

[6] See Souter v. Jones, 395 F.3d 577, 602 (6th Cir. 2005) (holding that a petitioner who can demonstrate actual innocence "should be allowed to pass through the gateway and argue the merits of his underlying constitutional claims."); Flanders v. Graves, 299 F.3d 974, 978 (8th Cir. 2002) (holding that an actual innocence claim could justify equitable tolling where there was "some action or inaction on the part of the respondent that prevented him from discovering the

including the Third Circuit, have deferred ruling on the issue until presented with a "proper case" (i.e., a case with a viable claim of actual innocence). See e.g., Knecht v. Shannon, 132 Fed.Appx. 407, 409 (3d Cir. 2005) (not precedential) ("[U]nless we accept Knecht's argument that he is 'actually innocent,' and that equitable tolling is therefore warranted, we must affirm the dismissal of his petition as untimely."); Hussman v. Vaughn, 67 Fed. Appx. 667 (3d Cir. 2003) (not precedential) (declining to address whether a claim of actual innocence could toll the statute of limitations where petitioner did not have a viable claim of actual innocence); See also Horning v. Lavan, 197 Fed. Appx. 90, 94 (3d Cir. 2006) (not precedential) (indicating that even if it were to permit equitable tolling based on a viable claim of actual innocence, the petitioner would still have to show reasonable diligence in pursuing his actual innocence claim).[7] Therefore, I must

---

relevant [exculpatory] facts in a timely fashion, or, at the very least, that a reasonably diligent petitioner could not have discovered these facts in time to file a petition within the period of limitations."); Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000) ("Equitable tolling would be appropriate, for example, when a prisoner is actually innocent."). But see Escamilla v. Jungwirth, 426 F.3d 868, 872 (7th Cir.2005) ("Prisoners claiming to be innocent, like those contending that other events spoil the conviction, must meet the statutory requirement of timely action."); David v. Hall, 318 F.3d 343, 347 (1st Cir. 2003) (holding that petitioners "who may be innocent are constrained by the same explicit statutory or rule-based deadlines as those against whom the evidence is overwhelming"); Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000) (holding that a claim of actual innocence would not constitute a "rare and exceptional" circumstance which would justify the equitable tolling of the limitations period).

[7] The Third Circuit is joined by the Second, Ninth, and Eleventh Circuits in reserving ruling on this issue until presented with a showing of actual innocence. See Whitley v. Senkowski, 317 F.3d 223 (2d Cir. 2003) ("The constitutionality of the AEDPA's statute of limitations if applied to a claim of actual innocence is an open question today."); Majoy v. Roe, 296 F.3d 770, 776 (9th Cir. 2002) (remanding to the district court to determine whether a claim of actual innocence as defined under Schlup had been established before addressing "what consequences such a finding has with respect to AEDPA's one-year statue of limitation"); Wyzykowski v. Dept. of Corrections, 226 F.3d 1213, 1218 (11th Cir. 2000) ("[T]he factual issue of whether the petitioner can make a showing of actual innocence should be first addressed, before addressing the constitutional issue of whether the Suspension Clause requires such an exception for actual innocence.").

determine if Ragan has a viable claim of actual innocence before ruling on the equitable tolling issue.[8]

To prevail on his claim of innocence, Ragan must support his allegations with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). Ragan must also demonstrate that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. Id. at 329; Sweger v. Chesney, 294 F.3d 506, 522 (3d Cir.2002) (citing Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002)). Ragan's newly discovered evidence does not meet this high standard.

Ragan was convicted on the testimony of one witness, Steven Guilford, who testified that he saw the driver of the car (identified as Ragan) lean over the passenger and fire shots into the deceased's car. Ragan's evidence of innocence is the statement of Martino Crews, a neutral bystander, who told police he saw the passenger get out of the car and shoot into the car. Crews's testimony shows that Ragan was not the shooter. Ragan argues that, had the jury been aware, in light of the weakness of the Commonwealth's case, that a disinterested party had told the police that the passenger, not the driver, had exited the car and fired the shots, no reasonable juror could have found beyond a reasonable doubt that Ragan was the shooter. Ragan has also proffered new evidence from Steven Guilford who is prepared to testify that after the shooting he disposed of a semi-automatic pistol that had been in the possession of the deceased at the time of the shooting.

---

[8] Following Horning, to succeed in equitable tolling the statute of limitations, Ragan may also have to demonstrate reasonable diligence in pursuing his actual innocence claim.

(Pet'r's Reply Br. at 13.) Ragan submits that this evidence weaken's the Commonwealth's case because it provides a potential self-defense claim for the shooter. (Id.)

Crews's statement is not new, nor is it reliable. Crews actually gave two statements to the police. While his first statement tends to exonerate Ragan, in his later statement, Crews stated that he thought it was the driver who did the shooting, confirming the prosecution's version of events. Commonwealth v. Ragan, No. 1215, slip. op at 8-9 (Pa. Super., June 17, 2005). The prior statement of Crews is not reliable enough to meet the Schlup standard for actual innocence. But even assuming Crews's statement was reliable, because his testimony was available at the time of trial[9] (Id. at 9), it is not considered "new" for the purposes of an actual innocence claim. Hubbard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004). The newly proffered testimony of Steven Guilford is also insufficient to form the basis of an actual innocence claim. See Wright v. Vaughn, 473 F.3d 85, 92 (3d Cir. 2006) (rejecting affidavits which "show nothing other than a prosecution witness' possible motivation for killing [the victim]" as insufficient to meet the Schlup standard). It cannot be said that in light of this evidence no reasonable juror would have voted to convict Ragan. Because Ragan has not presented a viable claim of actual innocence, it is not necessary for me to decide the question of whether a claim of actual innocence can justify equitable tolling of the statute of limitations.[10]

C. Certificate of Appealability

[9] One of Ragan's habeas claims is that it was constitutional error for his attorney not to call this witness, whose testimony directly contradicts that of Guilford.

[10] Ragan requests further proceedings on his claim of innocence, including briefing, argument, and an evidentiary hearing. I do not find any grounds for additional briefing or argument on this issue. Nor do I find grounds to issue a certificate of appealability.

When, as here, the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability ("COA") should issue when the petitioner shows, at least, "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." U.S. v. Cepero, 224 F.3d 256, 262-63 (3d Cir. 2000)(citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). In making this two-part inquiry, a court may proceed first "to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 485.

The period of delay in this case is neither so short as to be unassailably diligent, nor so long as to be unequivocally dilatory. Due to the inherently indeterminate nature of gauging the reasonableness of a petitioner's diligence, I find that reasonable jurists could disagree with my ruling on this procedural issue.[11] I further find that Ragan's allegations of prosecutorial misconduct state a constitutional claim about which reasonable jurists could disagree.[12] Ragan does not have to prove at this stage that his misconduct claims will succeed. Miller-El v. Cockrell, 537 U.S. 322, 337 (2003). Ragan need only show that jurists of reason could find that

---

[11] Also because there is a lack of guidance on this issue from other courts, I find that this is a question worthy of encouragement to proceed further.

[12] In support of my finding, I note that on direct appeal from conviction, a dissent issued challenging the majority's conclusion that the prosecutorial misconduct alleged did not violate Ragan's due process rights. See Commonwealth v. Ragan, No. 1179, slip op. at 2-3 (Pa. Super. May 25, 1994) (Cirillo, J., dissenting). Thus, there is evidence that reasonable jurists could disagree (and in fact, have disagreed) as to whether Ragan's petition states a valid constitutional claim. See Savage v. Wilson, No. 02-7854, 2003 WL 22709075, at *5 (E.D. Pa. Nov. 17, 2003) (not published) (granting a COA based in part on the fact that a Supreme Court Justice dissented from dismissal of appeal in a prior proceeding).

he has stated a valid claim for a constitutional deprivation.[13] Id. I find that Ragan has met this burden.[14] Therefore, a basis exists for a certificate of appealablity.

## III. Conclusion

It was error of law not to consider whether Ragan's Petition was filed within a reasonable period of time after the extraordinary circumstances warranting equitable tolling had been resolved. Upon consideration of the record before me I hold that Ragan was not reasonably diligent in delaying filing over 100 days after the extraordinary circumstances underpinning his equitable tolling claim had resolved. Therefore, the standard for equitable tolling has not been met and the Petition is denied as untimely. I also reject Ragan's contention that his claim of actual innocence creates a separate ground for equitable tolling.[15] However, because jurists of reason could debate whether Ragan's Petition states a valid claim of the denial of a constitutional right, and whether I have correctly ruled on the procedural issue of reasonable diligence, I grant Ragan's request for a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). An appropriate order follows.

---

[13] I add that, because his conviction in this case is inextricably intertwined with Ragan's death sentence, adjudication of his Petition presents issues of constitutional significance deserving of further inquiry.

[14] Ragan's Petition alleges violations of the 1st, 5th, 6th and 14th Amendments to the United States Constitution. Because Ragan has satisfied the Slack standard by demonstrating that his petition contains a valid constitutional issue with respect to prosecutorial misconduct, I make no determinations as to the merits of any of Ragan's other constitutional claims.

[15] I declined to opine on whether, had Ragan presented a viable claim of actual innocence, his claim could have formed the basis of an equitable tolling claim.

# APPENDIX A

**Table 1**

| **Date** | **Status of Statute of Limitations** | **Days Remaining in Statutory Period** | |
|---|---|---|---|
| April 24, 1996 | Statute of Limitations begins to run | 365 | |
| December 10, 1996 | PCRA filed - Statutory tolling begins | 135 | |
| June 28, 1999 | PCRA decided - Statutory tolling ends | 135 | |
| August 12, 1999 | Ragan retains private attorney | 90 | |
| August 12, 1999-<br>January 10, 2000 | Ragan abandoned by private attorney;<br>Extraordinary circumstances found | 0 | |
| January 10, 2000 | Federal Defenders contacted;<br>Extraordinary circumstances removed<br>(Ragan must file within "reasonable" period) | 0 | |
| February 7, 2000 | In forma pauperis request filed | +28 | |
| February 9, 2000 | In forma pauperis request granted;<br>Order that petition must be filed within 60 days | +30 | 0 |
| April 10, 2000 | Court-ordered 60 day deadline | +90 | +60 |
| April 21, 2000 | Habeas petition filed in federal court<br>Defenders have had case 102 days (appx. 14 weeks) post-extraordinary circumstances and 12 days (appx. 2 weeks) post-February 9th order deadline | +102 | +12 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DERRICK G. RAGAN, Petitioner, | : | |
| v. | : | CIVIL ACTION No. 00-2092 |
| MARTIN HORN, et al., Respondents. | : | |

**ORDER**

**AND NOW**, this _10th__ day of February, 2009, it is **ORDERED** that Petitioner's Motion Pursuant to Fed. R. Civ. P. 59(e) to Modify and Amend the Judgment (Doc. #83) is **DENIED** in part and **GRANTED** in part as follows:

- Petitioner's request for modification of my prior judgment that his habeas petition was filed out of time is **DENIED**;
- Petitioner's request for an evidentiary hearing on the issues of reasonable diligence and actual innocence is **DENIED**; and
- Petitioner's request under 28 U.S.C. 2253(c)(2) for a certificate of appealability is **GRANTED**.

s/Anita B. Brody

______________________

ANITA B. BRODY, J.

Copies **VIA ECF** on _______ to: Copies **MAILED** on _______ to: