# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

_____

|                                          |   |                  |
|------------------------------------------|---|------------------|
| DERRICK G. RAGAN,                        | : |                  |
|                          Petitioner,     | : |                  |
|              v.                          | : | No. 2:00-cv-2092 |
|                                          | : |                  |
| COMMISSIONER MARTIN HORN and             | : |                  |
| DONALD T. VAUGHN,                        | : |                  |
|                          Respondents.    | : |                  |

_____

## MEMORANDUM
### Report and Recommendation, ECF No. 156 – Adopted in Part

**Joseph F. Leeson, Jr.**                                    **March 29, 2016**
**United States District Judge**

## I.      INTRODUCTION

On April 24, 2000, Petitioner Derrick Ragan filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  Habeas Pet., ECF No. 1.

An amended petition raising eight claims was filed on February 22, 2012.  Am. Habeas

Pet., ECF No. 122.

Magistrate Judge Timothy R. Rice issued a Report and Recommendation ("R&R") on

September 29, 2014, recommending that the petition be dismissed with prejudice on all but two

claims,[1] and that a certificate of appealability be issued on only these two claims.  ECF No. 156.

On November 12, 2014, Petitioner timely filed Objections to the Magistrate Judge's

_____

[1]      The Magistrate Judge "reordered some of Ragan's claims for ease of discussion."  R&R
n.6.  However, Petitioner's objections to the R&R refer to the original claim numbers.
Accordingly, the Court will refer to the claim numbers originally assigned by Petitioner.
        The two claims regarding which the magistrate judge recommends that a certificate of
appealability be issued are: (II) trial counsel's ineffectiveness for failing to investigate and call
Martino Crews as a witness; and (V) trial counsel's ineffectiveness for failing to object to Victor
Ragan's hearsay statements.

findings regarding claims II, III, V, and VIII, ECF No. 159, and a Response was filed on January 29, 2015, ECF No. 165.

On January 19, 2016, this case was reassigned from the Honorable L. Felipe Restrepo to the Honorable Joseph F. Leeson, Jr.  ECF No. 169.

For the reasons set forth below, the R&R will be adopted in part.

## II.      STANDARD OF REVIEW- Objections to a Report and Recommendation

When objections to a report and recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a de novo review of those portions of the report to which specific objections are made.  Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989); Goney v. Clark, 749 F.2d 5, 6-7 (3d Cir. 1984) ("providing a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process).  Local Rule 72.1(IV)(b) requires that "written objections . . . specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." Further, the objections may not raise new issues or evidence that could have been, and was not, presented to the magistrate judge.  See L.R. 72.1(IV).  "When no objections are filed, the district court need only review the record for plain error or manifest injustice."  Harper v. Sullivan, No. 89-4272, 1991 U.S. Dist. LEXIS 2168, at *2 n.3 (E.D. Pa. Feb. 22, 1991); see also Oldrati v. Apfel, 33 F. Supp. 2d 397, 399 (E.D. Pa. 1998) (explaining that in the absence of a timely objection, the court should review the magistrate judge's report and recommendation for clear error).  The district court may accept, reject, or modify, in whole or in part, the findings and recommendations contained in the report.  28 U.S.C. § 636(b)(1)(C).

III.    **BACKGROUND**

Except as otherwise noted herein, there are no objections to the magistrate judge's

summary of the trial evidence and procedural history, and it is adopted.

On July 9, 1991, Petitioner was convicted by a jury of first-degree murder, recklessly

endangering another person, and possessing an instrument of crime, in the shooting death of

Anthony Thomas ("victim") on June 15, 1990.  R&R 1-7, ECF No. 156.  The Commonwealth

presented the eyewitness testimony of Steven Guilford ("Guilford"), who was a passenger in the

victim's vehicle.  Guilford reported that Petitioner drove alongside the victim's vehicle and that

Petitioner and the victim engaged in an argument about money.  Guilford, who subsequently

attempted to recant his statements to police identifying Petitioner as the shooter, testified that

Petitioner fired multiple gun shots at the victim's vehicle.  Jerry Burton was a passenger in

Petitioner's vehicle.  The Commonwealth presented supporting testimony regarding the angle

that the shots were fired and confirming that one bullet entered under the victim's left armpit,

killing him.  Petitioner was sentenced to life imprisonment.  The conviction and the denial of his

petitions filed under the Post-Conviction Relief Act, 42 Pa. Cons. Stat. §§ 9541-9551 ("PCRA"),

were affirmed on appeal.

Additionally, to expand on the procedural history provided in the R&R, see R&R 7-9,

Petitioner was represented by Harry R. Seay, Esquire, at trial.  On direct appeal, Petitioner was

represented by Eugene P. Tinari, Esquire.  See Resp. Am. Habeas Petition Ex. 8, ECF No. 132-8.

Mr. Tinari raised eight issues on appeal, including the alleged ineffectiveness of trial counsel.

Id.  On December 10, 1996, Norris E. Gelman, Esquire, filed the first PCRA petition, which also

presented claims of trial counsel's ineffectiveness, on Petitioner's behalf.  The second PCRA

petition was filed by Michael Wiseman, Esquire, in October 2001.

IV.     **ANALYSIS**

Petitioner filed objections to the Magistrate Judge's findings regarding claims II, III, V, and VIII.  The Commonwealth did not file objections.  However, in Response to Petitioner's Objections, the Commonwealth contends that Claim II, regarding the statements of Martino Crews, is procedurally defaulted and that the magistrate judge erred in finding cause to excuse the default.  The magistrate judge's findings as to each claim and any objections thereto are addressed in seriatim.

A.      **Petitioner's Claim I - Actual Innocence**

The magistrate judge concludes that the evidence Petitioner presents to support his claim of actual innocence is not new or reliable and does not make it more likely than not that no reasonable juror would have convicted him.[2]  R&R 14-21 (discussing renumbered claim II).  Specifically, the magistrate judge reviews the 1990 statements of Martino Crews,[3] the 2012 declarations of Steven Guilford, Varsella Guilford, Larry Guilford, and Robert Mack.

In the absence of objections, the Court has reviewed the record for plain error and found none.  Therefore, the magistrate judge's findings and recommendations as to this claim are adopted.

B.      **Petitioner's Claim II - Martino Crews**

The magistrate judge reviewed: (A) whether the Commonwealth provided the exculpatory statements of Martino Crews in pre-trial discovery; and (B) assuming they were

---

[2]     Schlup v. Delo, 513 U.S. 298, 324-28 (1995) (holding that for a petitioner to show he is "actually innocent", he must show that, in light of the new evidence, it is more likely than not that no reasonable juror would have convicted him).

[3]     Martino Crews initially made a statement to police that he saw the shooter exit Petitioner's car on the passenger side and walk up to the victim's car, but two weeks later told police that they misinterpreted his earlier statement because no one actually walked up to the car; rather, an occupant of the other car leaned out the passenger door and shot the victim.

provided to defense counsel, whether counsel was ineffective for failing to call Crews as a

witness at trial.  R&R 21-33 (addressing renumbered claim III).

   **1.     *Brady*[4] *Violation***

      The magistrate judge explains that Petitioner first claimed a <u>Brady</u> violation with respect

to the Martino Crews statements in his second PCRA petition.  R&R 21-27.  The magistrate

judge determines that although the state court dismissed the petition as untimely, it had to first

address the merits of this claim to determine whether "(i) the failure to raise the claim previously

was the result of interference by government officials with the presentation of the claim in

violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the

United States;" or "(ii) the facts upon which the claim is predicated were unknown to the

petitioner and could not have been ascertained by the exercise of due diligence."  42 Pa. Cons.

Stat. § 9545(b)(1).  The magistrate judge determines that the state courts' procedural rulings

were not independent of Petitioner's suppression claim, and the claim cannot be summarily

dismissed as procedurally barred.  Considering the PCRA testimony of the prosecutor regarding

discovery practices, the prosecution's knowledge of Crews' statement, and the disclosure of

documents contained in the homicide binder to defense counsel, the magistrate judge concludes

that it was not an unreasonable determination of the facts for the state courts to conclude that

Martino Crews' statements were disclosed to defense counsel before trial and that the denial of

Petitioner's claim was not contrary to <u>Brady</u>.

      Petitioner objects to the magistrate judge's findings as to whether there was a <u>Brady</u>

violation.  He argues that the prosecution was not able to locate a discovery transmission

---

[4]      <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963) ("We now hold that the suppression by the
prosecution of evidence favorable to an accused upon request violates due process where the
evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of
the prosecution.").

showing that Crews' statements were provided to defense counsel, that the prosecutors had no

specific recollection of turning over the statements, that despite contrary testimony, the District

Attorney's Office had no set practice regarding discovery, and that the testimony about the

homicide binder was for "most cases," not this case.  Pet.'s Objs. 9-11, ECF No. 159.

       In Response to the objections, the Commonwealth asserts that the magistrate judge

erroneously concludes that the state courts' timeliness findings were not independent of federal

law because to have reached the merits of the Brady claim, the state courts would have also had

to address whether the suppressed material was favorable to the accused, and whether its

suppression resulted in prejudice.  See Strickler v. Greene, 527 U.S. 263, 281-82 (1999)

(outlining the elements of a Brady violation).  The Commonwealth argues that because the state

courts did not address all these elements, its untimeliness ruling was independent of federal law

and the default should stand.

       "This Court will not review a question of federal law decided by a state court if the

decision of that court rests on a state law ground that is independent of the federal question and

adequate to support the judgment."  See Coleman v. Thompson, 501 U.S. 722, 729 (1991).

Further, the Antiterrorism and Effective Death Penalty Act ("AEDPA") provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>  (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>  (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[T]he 'contrary to' provision is only implicated if the state court 'applies

a rule that contradicts the governing law set forth' by the Supreme Court or if it arrives at a

different result when confronted by 'facts that are materially indistinguishable' from those previously before the Supreme Court."  Hunterson v. Disabato, 308 F.3d 236, 245 (3d Cir. 2002) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  In applying the "unreasonable determination of the facts" standard, "federal court review considers only whether the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hunterson, 308 F.3d at 245-46.  "The statute directs the federal court to presume that all determinations of fact made by the state court are correct and requires that the petitioner present 'clear and convincing evidence' to rebut this presumption."  Id. at 246.

The problem with the Commonwealth's argument is that it puts the Court in a catch-22. It assumes the state courts would have had to have considered the remaining elements to reach a decision on the merits.  However, in finding that the Crews' statements were not suppressed, the Brady claim failed on its merits and there was no need for the state court to reach the question of whether the statements were favorable or whether their alleged suppression was prejudicial.  At the same time, this Court recognizes that the state courts' determination led to the decision to deny the PCRA petition as untimely.  Either way, the result is the same in this case.  If this Court agrees with the magistrate judge that the state courts' procedural rulings were not independent of Petitioner's Brady claim and reaches a merits decision, the claim is denied because, although Petitioner's reading of the facts is permissible, the state court's factual determinations were also reasonable[5] and the state court correctly applied federal law.  See Hunterson, 308 F.3d at 250

---

[5]    In making this determination, the Court notes the PCRA testimony regarding the practice in the District Attorney's Office to turn the homicide binder over to the defense, an intact copy of which was located in the city's archives containing the Crews' statements, and the anticipated order of proof, which was addressed at length in a pretrial hearing before Judge Ribner, that identified Martino Crews as an eyewitness.

(explaining that "if permissible inferences could be drawn either way, the state court decision must stand, as its determination of the facts would not be unreasonable"). If, on the other hand, this Court finds that the untimeliness ruling was independent of federal law, then the claim is denied because it is defaulted. See Peterson v. Brennan, 196 Fed. Appx. 135, 142 (3d Cir. 2006) (affirming the district court's order that "the PCRA statute of limitations is an adequate and independent state ground to deny habeas relief"). Accordingly, Petitioner's claim is dismissed.

### 2.    *Ineffectiveness of Counsel*

The magistrate judge reasons that because the state court's refusal to address Petitioner's ineffectiveness claim for timeliness reasons was based on adequate and independent state grounds, the claim is procedurally defaulted. Determining that the Pennsylvania Supreme Court recognized the inherent problems with the procedure for raising ineffectiveness claims in place at the time of Petitioner's direct appeal,[6] however, the magistrate judge applies the Martinez[7] rule, as expanded by Trevino.[8] The magistrate judge explains that to excuse procedural default pursuant to Martinez, Petitioner must show that his claim of trial counsel ineffectiveness has some merit, that PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness, and that Petitioner was actually prejudiced by the ineffectiveness. R&R 27-30.

---

[6]    Between 1977 and 2002, Pennsylvania law required criminal defendants to raise ineffectiveness claims on direct appeal if the defendant was represented by new counsel. See Commonwealth v. Hubbard, 472 Pa. 259, 276 (1977). But see Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002) (overruling Hubbard "to the extent that it require[d] that trial counsel's ineffectiveness be raised at that time when a petitioner obtains new counsel or those claims will be deemed waived").

[7]    Martinez held, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Martinez v. Ryan, 132 S. Ct. 1309, 1320 (2012).

[8]    Trevino v. Thaler, 133 S. Ct. 1911 (2013) (applying Martinez to cases where the defendant was not limited to bringing ineffective assistance of trial counsel claims on collateral review, but could also assert them on direct appeal).

The magistrate judge concludes that even if trial counsel, who is now deceased and cannot explain why he may have decided not to interview or call Martino Crews to testify, was deficient for not interviewing Crews, Petitioner cannot show that he was prejudiced by counsel's error because Crews' testimony would not have changed the outcome of the case.  R&R 30-33 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).[9]  The magistrate judge reasons that Crews explained the discrepancy between his first and second statement to police and if called to testify about his first statement that the shooter exited from Petitioner's vehicle, his second statement, that made the driver of Petitioner's vehicle the shooter and placed him inside the vehicle when shots were fired at the victim, would have been introduced and would have supported Guilford's testimony identifying Petitioner as the shooter.  Further, the magistrate judge explains, even if the jury believed Crews' initial statement, Petitioner could have been convicted of first degree murder as an accomplice.  Consequently, the magistrate judge determines that Petitioner failed to establish actual prejudice and recommends that the claim be dismissed.  See Crawford v. Bickell, No. 11-5773, 2012 U.S. Dist. LEXIS 185429, at *17 n.14 (E.D. Pa. Nov. 28, 2012) (finding that the petitioner did not show prejudice to excuse his procedural default because his ineffectiveness "claims lacked merit and he would not have prevailed even if the failure to have properly presented his claims to the state court could be

---

[9]     "Strickland requires requires Petitioner to show the following: (1) that his attorney's representation was unreasonable under 'prevailing professional norms,' and (2) that but for the deficiency in representation, there was a reasonable probability that the 'result of the proceeding would have been different.'"  United States v. Nguyen, 619 Fed. Appx. 136, 140 (3d Cir. 2015) (quoting Strickland, 466 U.S. at 688, 694).  "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'"  Collins v. Sec'y of the Pa. Dep't of Corr., 742 F.3d 528, 547 (3d Cir. 2014) (quoting Strickland, 466 U.S. at 694); Scott v. Sobrina, No. 09-1081, 2010 U.S. Dist. LEXIS 144092, at *49 (E.D. Pa. Jan. 28, 2010) (stating, "a petitioner must show prejudice by demonstrating a proper investigation would have produced information that would have resulted in a different trial outcome"), adopted by 2011 U.S. Dist. LEXIS 145371 (E.D. Pa. Dec. 16, 2011).

attributed to counsel").  He finds, however, that reasonable jurists could disagree and recommends that a certificate of appealability be issued.

Petitioner objects to the R&R.  Pet.'s Objs. 3-9.  He contends that Crews' testimony would have identified Burton as the shooter and supported the defense theory that Petitioner was merely present.  He asserts that this testimony would have contradicted the Commonwealth's theory of the case that Petitioner acted alone and creates a reasonable probability that at least one juror would have had doubts as to Petitioner's guilt, especially in light of Guilford's testimony that he did not see the gun in Petitioner's hand and only thought he was the shooter.  Petitioner argues that counsel's failure to even interview Martino Crews foreclosed an opportunity to call him as a witness and was prejudicial.

In Response, the Commonwealth objects to the magistrate judge's determination that Martinez applies to this case.  The Commonwealth asserts that at the time of Petitioner's direct appeal, filed by new counsel, Pennsylvania law required him to raise ineffectiveness claims on direct appeal.  The Commonwealth submits that because Petitioner had an opportunity to raise such claims in two subsequent proceedings, on direct appeal and in his first PCRA petition, the default is not excused under Martinez.  The Commonwealth further challenges the magistrate judge's determination that Hubbard is confusing and unworkable in the instant action. Moreover, the Commonwealth submits that Crews' statements, suggesting first that Petitioner was not the shooter and then two weeks later that Petitioner was the shooter, are contradictory at best.  The Commonwealth argues that such conflicting statements would not help Petitioner's case and, instead, may have identified him as the shooter.  The Commonwealth agrees with the magistrate judge that such facts preclude a finding of prejudice, but goes further to suggest that these facts also prevent a finding that trial counsel acted unreasonably in failing to call Crews.  In

response to Petitioner's objection that to proceed under an accomplice theory, the Commonwealth would have had to change its theory of the case, the Commonwealth submits that this kind of speculation as to what additional evidence the prosecution may have presented in response, is a necessary part of a prejudice analysis.  Resp. Pet.'s Objs. 9, ECF No. 165 (citing Wong v. Belmontes, 558 U.S. 15, 20 (2009)).

"In the case of a person incarcerated from a judgment of a state court, a prerequisite to federal habeas review is that the petitioner have exhausted the remedies available to him in the state courts to the extent such remedies exist and are effective."  Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).  "A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."  Coleman v. Thompson, 501 U.S. 722, 730 (1991).  But, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Id. at 750; United States v. Frady, 456 U.S. 152, 167-68 (1982).

In Martinez, the Supreme Court recognized a "limited qualification to Coleman" that where a state chooses "to move trial-ineffectiveness claims outside of the direct-appeal process, where counsel is constitutionally guaranteed, . . . counsel's ineffectiveness in an initial-review collateral proceeding qualifies as cause for a procedural default."  Martinez, 132 S. Ct. at 1317.  "[T]he procedural default exception announced in Martinez applies only in states where ineffective assistance claims, either expressly or as a matter of practicality, could not have been raised on direct appeal."  Cox v. Horn, 757 F.3d 113, 125 n.8 (3d Cir. 2014) (citing Trevino, 133 S. Ct. at 1914-15) (applying Martinez to the petitioner because he was "represented by the same

counsel at trial and on direct appeal [and] did not have a realistic opportunity to raise an ineffective assistance of trial counsel claim until collateral review," but refusing to "decide whether, as a general matter, Pennsylvania's pre-<u>Grant</u> legal landscape falls within the ambit of the <u>Martinez</u> rule").  To qualify under the <u>Martinez</u> exception, the petitioner "must show that: (1) the claim of ineffectiveness of trial counsel is substantial, that is, it has 'some merit'; (2) the default was caused on collateral review by counsel's ineffectiveness or the lack of counsel; and (3) state law requires a petitioner to raise a claim of ineffectiveness in initial-review collateral proceedings rather than on direct review."  <u>Givens v. Kyler</u>, No. 02-2655, 2014 U.S. Dist. LEXIS 169253, at *13-16 (E.D. Pa. Dec. 8, 2014).

Petitioner was represented by new counsel on direct appeal and, at that time, Pennsylvania law required claims regarding the ineffective assistance of trial counsel to be raised on direct appeal if there was new counsel.  <u>See</u> <u>Hubbard</u>, 472 Pa. at 276 (1977).  In fact, appellate counsel raised at least one claim of trial counsel's ineffectiveness on direct review, showing that it was not "virtually impossible" to present such a claim.  <u>See</u> <u>Trevino</u>, 133 S. Ct. at 1915.  Nevertheless, Petitioner did not make any claims of trial counsel's ineffectiveness as to the statements or testimony of Martino Crews.

The magistrate judge recommends applying the <u>Martinez</u> rule, as expanded by <u>Trevino</u>, based on the Pennsylvania Supreme Court's recognition of the problems in requiring that ineffective assistance claims be raised on direct review if new counsel has been appointed or retained.  However, the state court did not believe that presenting ineffectiveness claims on direct review was inherently problematic; rather, it was the inflexible approach taken by <u>Hubbard</u> mandating that such claims be raised on direct review that created problems.  <u>See</u> <u>Grant</u>, 813 A.2d at 733 (reassessing "the absolute rule" in <u>Hubbard</u> in light of the "more flexible approach"

12

originally taken that "created general guidelines for raising claims of ineffectiveness, while recognizing that in order for the rule to work in practice, common sense required some exceptions").  Similarly, the reasons the Trevino court extended the Martinez rule to the Texas system, which permitted but did not require defendants to raise ineffective assistance claims on direct appeal, were: (1) the time limitations in filing post-trial motions rendering it "perhaps impossible" for appellate counsel to adequately present an ineffective assistance of counsel claim, and (2) refusing to extend Martinez to those defendants who chose to exercise their right to wait until collateral review to raise ineffectiveness claims would create "significant unfairness."  See Trevino, 133 S. Ct. at 1918-21.

In the instant action, direct appeal counsel also represented Petitioner at sentencing.  He was therefore familiar with the case before the time to file a direct appeal had begun to run.  The problems recognized in Grant, therefore do not apply to this case.  Because Petitioner's first PCRA proceedings were not the first opportunity to raise ineffective assistance claims and because it was not "virtually impossible," as a practical matter, to raise such claims on direct review, Martinez and Trevino do not apply.  See Speight v. Beard, No. 04-4110, 2016 U.S. Dist. LEXIS 13662, at *25-29 (E.D. Pa. Jan. 29, 2016) (finding, in a pending R&R, that the petitioner's reliance on Martinez and Trevino is misplaced because the "petitioner's PCRA proceeding was not an 'initial-review collateral proceeding' as defined by Martinez, and it was not 'virtually impossible, as a practical matter,' for petitioner to raise claims of ineffective assistance of trial counsel in his post-sentence and direct appeal proceedings," noting that the petitioner had raised claims of ineffective assistance of trial counsel on direct appeal); Rankine v. Sauers, No. 07-2709, 2012 U.S. Dist. LEXIS 190550, at *33-35 (E.D. Pa. June 29, 2012) (determining that the petitioner's direct appeal was decided pre-Grant and because the petitioner

had new counsel on direct appeal, he waived claims of ineffective assistance of trial counsel by

not raising them, making <u>Martinez</u> inapplicable to his case and finding that his claims remained

defaulted), <u>adopted by</u> 2014 U.S. Dist. LEXIS 137945 (E.D. Pa. Sept. 30, 2014); <u>Fears v.</u>

<u>Wetzel</u>, No. 05-cv-1421, 2015 U.S. Dist. LEXIS 99636, at *15-21 (W.D. Pa. July 30, 2015)

(concluding that neither <u>Martinez</u> nor <u>Trevino</u> applied because the pre-<u>Grant</u> petitioner could

have raised claims of ineffective assistance of trial counsel in his post-sentence and direct appeal

proceedings, and that the petitioner had not established cause to excuse his procedurally

defaulted claims).  The Commonwealth's objection to the application of <u>Martinez</u> is sustained,

and this claim is dismissed as procedurally defaulted.[10]

### C.    Petitioner's Claim III – Prosecutorial Misconduct Regarding Evidence

The R&R addresses Petitioner's claims that the prosecutor engaged in misconduct

throughout the trial.  R&R 42-46.  Specifically, Petitioner contends the prosecutor improperly:

---

[10]      Having found that the claim is procedurally defaulted, the Court need not address its
merits.  Nevertheless, the Court finds that Petitioner has not shown a reasonable probability that
the outcome would have been different because it is at least equally likely that Martino Crews'
testimony may have strengthened the Commonwealth's case, by corroborating the testimony of
Guilford or allowing for an accomplice finding.  <u>See</u> <u>Lewis v. Mazurkiewicz</u>, 915 F.2d 106, 113-
15 (3d Cir. 1990) (rejecting the petitioner's ineffectiveness claim because he failed to show a
reasonable likelihood that interviewing the witness "would have produced any useful
information not already known to trial counsel, much less that any such information would have
dictated a different trial strategy or led to a different result at trial" and "failed to show any
reasonable probability that he would have been acquitted had [the witness] testified either alone
or in conjunction with petitioner").  Moreover, "[j]udicial scrutiny of counsel's performance
must be highly deferential."  <u>Strickland</u>, 466 U.S. at 689 (explaining that courts should not
second-guess counsel's assistance and engage in "hindsight, to reconstruct the circumstances of
counsel's challenged conduct").  A "court must indulge a strong presumption that counsel's
conduct falls within the wide range of reasonable professional assistance."  <u>Id.</u> at 689-90 ("There
are countless ways to provide effective assistance in any given case. Even the best criminal
defense attorneys would not defend a particular client in the same way.").  "Witness selection is
entrusted to counsel's sound judgment, not to the defendant."  <u>Manchas v. Superintendent of SCI</u>
<u>Huntingdon</u>, 428 F. App'x 184, 190 (3d Cir. 2011).  Also, "[a]s <u>Strickland</u> made clear, trial
counsel was not bound by an inflexible constitutional command to interview every possible
witness."  <u>Lewis</u>, 915 F.2d at 113.

(1) questioned Steven Guilford about intimidation by Victor Ragan, Petitioner's brother; (2) questioned Varsella Guilford about her familiarity with Petitioner's family and friends, showing her police photographs of the individuals; (3) questioned Steven Guilford about a stabbing that happened in Guilford's home the night before his trial testimony; and (4) introduced evidence concerning Petitioner's involvement in a rap group, the Kevin Smalls murder, and the prosecution of Nicholas Porter for that murder.  Further, Petitioner argues: (5) that cumulative error deprived him of a fair trial.

"To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial."  Greer v. Miller, 483 U.S. 756, 765 (1987) (internal quotations omitted).

### 1.      Intimidation by Victor Ragan

The magistrate judge concludes that the claim challenging Guilford's testimony about intimidation by Victor Ragan was never raised in state court and is procedurally defaulted.  R&R 43.  Moreover, the magistrate judge explains that Petitioner cannot show he was prejudiced by trial counsel's failure to object.  Petitioner disagrees, arguing that he was prejudiced and that the rule announced in Martinez excuses his default.  For the reasons previously stated, Martinez does not apply to Petitioner's case, and this claim is dismissed as procedurally defaulted.[11]

### 2.      Varsella Guilford

---

[11]      Even if Martinez were to provide "cause" for the procedural default, Petitioner has failed to show prejudice.  The testimony the prosecutor elicited, regarding which Petitioner claims counsel should have objected, was not prejudicial because Guilford denied that Victor Ragan made any threats.  Specifically, when the prosecutor asked Guilford whether Victor Ragan threatened him or his family against testifying, Guilford responded: "He don't know.  He don't know we're testifying.  That's why I don't want him to know that I'm here."  Am. Habeas Pet. 60.  Further, to the extent Petitioner argues the Commonwealth failed to establish the required link between Victor Ragan's threats and Petitioner, citing Commonwealth v. Martin, 515 A.2d 18, 21 (Pa. Super. 1986), he ignores the exception carved out in Martin admitting statements offered to explain a witness's prior inconsistent statement, as was the circumstance here.

The magistrate judge explains that the state court denied Petitioner's claim that the prosecutor improperly questioned Varsella Guilford, Steven Guilford's mother, about her familiarity with Petitioner's friends and family, who had criminal backgrounds, when the Superior Court found that the questions were not used to show Petitioner's guilt by association, but to explain why Varsella Guilford had recanted a police statement incriminating Petitioner. R&R 43-44. The magistrate judge determines that the state courts' found that the prosecutor was only trying to explain that Varsella Guilford recanted her statement because she was fearful living in the same neighborhood as these individuals where violence and death were everyday realities, and that the trial court's cautionary instruction eliminated any prejudice.[12] The magistrate judge concludes this was not an unreasonable determination of the facts and was consistent with federal law.

Presuming, as this Court must, that the state courts' factual determinations are correct, the Court agrees that the opinion of the Pennsylvania Superior Court denying relief was not based on an unreasonable determination of the facts or contrary to federal law. See Ramirez v. DiGuglielmo, No. 12-5803, 2014 U.S. Dist. LEXIS 128688, at *125 (E.D. Pa. May 12, 2014) (concluding that "the jury is presumed to follow a court's cautionary instructions"), adopted by

---

[12]     In its cautionary instruction, the trial court explained:
. . . the prosecutor was not acting in bad faith by trying "to demonstrate that [Varsella's] recantations derived from [her] subjective fear that she lived in the same neighborhood as these men and that violence and death were everyday realities." [Pennsylvania Superior Court opinion at 7 5/25/94]. The Superior Court further noted that the trial court had provided a cautionary instruction that "eliminated any prejudice" to Ragan. Id. at 8; see also N.T. 7/1/91 at 22 (instructing jury to "disregard and don't draw any inferences from those questions concerning those individuals [family and friends of Ragan] and/or the showing of any photographs with regard to those individuals. Don't draw any inferences, and don't try [to] speculate, or don't try to guess, because you will probably come up with the wrong guess. So disregard that."). 
R&R 44.

2014 U.S. Dist. LEXIS 127138 (E.D. Pa. Sept. 10, 2014).  Although the cautionary instruction was not provided promptly, a review of the transcript indicates that defense counsel did not initially want such an instruction to be given for concern "[i]t merely highlights what is already before [the jury]."  N.T. 6/28/91 136.  See Buehl v. Vaughn, 166 F.3d 163, 170 (3d Cir. 1999) ("In some circumstances, such an instruction may be strongly advisable; in others, counsel may reasonably conclude that it is strategically preferable to omit such a request since the instruction might have the undesired effect of highlighting the other crimes evidence.").  The trial court indicated that it would nevertheless give such an instruction, but did not provide the instruction until the following day of testimony after defense counsel requested the instruction.  N.T. 7/1/91 19-22.

### 3.     *Stabbing at Guilford's Home*

On the night between Guilford's first and second day of trial testimony, Charles Twyman was stabbed at Guilford's residence.  The magistrate judge rejects Petitioner's claim that the prosecutor improperly questioned Guilford about the incident and about Twyman's relationship to Thomas, finding there was never any suggestion that Petitioner was responsible for the stabbing.  The magistrate judge notes the state court's comment that the inquiry again demonstrated the aura of violence that was part of Guilford's everyday life and finds that its decision rejecting the claim was not contrary to law.

Petitioner's claim, that the prosecutor created the false impression that this incident was related to the shooting by making a connection between Twyman and Thomas, is unsupported.  Petitioner admits that Guilford testified that the stabbing had no connection to this case or to his testimony.  Accordingly, even if the prosecutor erred, which he did not, it was not of "sufficient

17

significance" to deny Petitioner the right to a fair trial.  The Court finds that the state court's decision was not contrary to federal law.

### 4.      Petitioner's Involvement in a Rap Group and with Kevin Smalls' Homicide

In his habeas petition, Petitioner alleges the prosecutor introduced irrelevant and prejudicial testimony regarding the Kevin Smalls homicide, including identifying Petitioner and Nicholas Porter as members of a rap group called the Plush Brothers.  Am. Habeas Pet. 67-40.  Porter was convicted of Smalls' murder.  Petitioner claims that the prosecutor called Sherie Ford to link him to the homicide, but failed because she disavowed her prior statement that Petitioner threatened to kill Thomas.  The prosecutor also questioned Guilford about Petitioner's relationship with individuals involved in the Smalls' homicide.  Petitioner claimed that his First Amendment rights to association were violated.

The magistrate judge concludes that evidence of Petitioner's membership in the rap group, along with Porter, was relevant evidence of Petitioner's motive to kill Thomas.  The magistrate judge explains that to the extent Ford denied her statement to police, it was introduced as substantive evidence of Petitioner's motive, and that the state court's decision was not contrary to law or based on an unreasonable determination of the facts.  The magistrate judge determines that the First Amendment claim was not raised in state court and is procedurally defaulted.

In his objections, Petitioner repeats his habeas arguments and contends that the magistrate judge incorrectly determined that his First Amendment claim was defaulted because he did in fact raised the claim on appeal, but the Superior Court simply failed to address it.

Upon review, the Court finds that the evidence involving the Smalls' homicide and Petitioner's connection through the rap group was relevant and admissible to establish motive.

See Ramirez v. DiGuglielmo, No. 12-5803, 2014 U.S. Dist. LEXIS 128688, at *119-20 (E.D. Pa. May 12, 2014) (rejecting the petitioner's claim that the trial court erred in admitting evidence of another crime).  "[P]roof of motive is not necessary to establish the elements of a crime to support a verdict of guilt, [but] is always admissible and always relevant evidence."  Id. at 118. "If the evidence is relevant, the mere fact that testimony of another crime may be prejudicial does not bar its introduction into evidence."  Id. at 119.  Accordingly, the state courts' decision was not contrary to law or based on an unreasonable finding of the facts.

    Moreover, regardless of whether Petitioner's claim is defaulted, it is without merit.  A defendant's First Amendment right of association is not violated where evidence of his membership in a particular group is admitted to show motive.  See Munoz v. Grace, No. 05-4199, 2007 U.S. Dist. LEXIS 58516, at *39 (E.D. Pa. Aug. 9, 2007) (finding that evidence of the petitioner's "gang membership was highly probative on the issue of motive to commit murder"). "The First Amendment, [also], does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent."  Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993) (explaining that "[e]vidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like").  See also Perez v. Dretke, 172 Fed. Appx. 76, 82 (5th Cir. 2006) (rejecting the 2254 habeas petitioner's claim that his First Amendment right to freedom of association was violated when the trial court admitted evidence of his gang involvement because his association was relevant to show motive and a reason for the murders); Bennett v. Deeds, No. 93-16766, 1994 U.S. App. LEXIS 23527, at *5-7 (9th Cir. 1994) (concluding that trial evidence of the petitioner's gang membership did not violate his due process or First Amendment rights because the jury could draw permissible inferences from such evidence that the defendant aided

and abetted in the murder or that the defendant's motive "was to retaliate against those who harmed [] a friend of the gang).

### 5. *Cumulative Misconduct*

Petitioner argues that in addition to the specific misconduct alleged, the prosecutor's improper behavior intensified during closings when he suggested that Petitioner was guilty by association, portrayed Twyman as another victim of witness intimidation, and appealed to the jury to make a statement about crime in the community.  Petitioner asserts that the trial court erred in rejecting his claim because it treated each act as an isolated incident rather than collectively.

The magistrate judge determines that Petitioner's challenge to the prosecutor's closing remarks is procedurally defaulted and that because all of his prosecutorial misconduct claims are procedurally defaulted or meritless, his cumulative effect challenge is meritless.  R&R 46.

In his objections to the R&R, Petitioner asserts that he is not raising a separate claim of prosecutorial misconduct based on the remarks in closing arguments, but is including this misconduct in his cumulative error claim.

"The cumulative error doctrine requires the existence of 'errors' to aggregate. Absent such errors by counsel, the cumulative error doctrine does not apply." Robinson v. Superintendent, No. 13-6918, 2014 U.S. Dist. LEXIS 175840, at *40 (E.D. Pa. Nov. 19, 2014). The "cumulative effect of each non-error does not add up to ineffective assistance of counsel: zero plus zero is still zero." United States v. Narducci, 18 F. Supp. 2d 481, 502 (E.D. Pa. 1997). See also LaBrake v. Stowitzky, No. 07-0212, 2009 U.S. Dist. LEXIS 87890, at *48-49 (E.D. Pa. Jan. 30, 2009) ("In the context of claims of cumulative prosecutorial misconduct amounting to a denial of due process, federal courts have held, like the Pennsylvania Supreme Court, that an

accumulation of meritless claims results in another meritless claim and cannot generate some error on which relief may be granted."), adopted by 2009 U.S. Dist. LEXIS 80527 (E.D. Pa. Sept. 3, 2009).  "Under the doctrine of cumulative error, habeas relief is appropriate when: (1) the individual error involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors so infected the entire trial that the resulting conviction violates due process." LaBrake v. Stowitzky, No. 07-0212, 2009 U.S. Dist. LEXIS 87890, at *48-49 (E.D. Pa. Jan. 30, 2009), adopted by 2009 U.S. Dist. LEXIS 80527 (E.D. Pa. Sept. 3, 2009).  Accordingly, "a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice." Albrecht v. Horn, 485 F.3d 103, 139 (3d Cir. 2007).  Further, a "claim of cumulative error must be presented to the state courts before it may provide a basis for habeas relief." Collins v. Sec'y of the Pa. Dep't of Corr., 742 F.3d 528, 543 (3d Cir. 2014); Reid v. Beard, 420 Fed. Appx. 156, 160 (3d Cir. 2011) (reasoning that the trial court is in the best position to consider the effect of any misconduct).

As discussed, Petitioner's individual allegations of prosecutorial misconduct are either procedurally defaulted or meritless.  The new individual claim of misconduct he attempts to raise through a cumulative error argument is also procedurally defaulted as it was never presented to the state courts.  Accordingly, there aren't multiple instances of misconduct to combine that could allow for a cumulative error finding.

### D.      Petitioner's Claim IV - Sufficiency of the Evidence

The magistrate judge determines that the state courts' conclusions, that the evidence was sufficient to support Petitioner's first-degree murder conviction, was not contrary to, nor an unreasonable application of, clearly established federal law.  R&R 11-14 (considering

renumbered claim I).  The magistrate judges cites <u>Jackson v. Virginia</u>, 433 U.S. 307, 318-19 (1979), as the clearly established federal law governing Petitioner's sufficiency of the evidence claim.[13]  The magistrate judge, "viewing the evidence in the light most favorable to the prosecution," which includes the initial statements Guilford made to police, evidence of Petitioner's motive, and testimony about the angle of the shots, concludes that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>See Jackson</u>, 443 U.S. at 319.

After review, and in the absence of objections and plain error, the Court adopts the magistrate judge's findings and recommendations regarding this claim.

### E.        Petitioner's Claim V – Petitioner's Confession to Victor Ragan

In his habeas petition, Petitioner argued that trial counsel was ineffective for failing to object to the admission of his statements to his brother, Victor Ragan, through the testimony of Guilford as double hearsay.  Specifically, when questioning Guilford about what Victor Ragan said in regards to the shooting, Guilford testified: "He said his brother said, he don't know – he didn't know I was in the car. Victor said he didn't mean to shoot Anthony, that his brother needed glasses, and that he was shooting at the door."

The magistrate judge explains that the PCRA court denied the claim because it determined the statements were not being offered for the truth of the matter asserted.  R&R 33-42.  Rather, the PCRA court reasoned that they were offered to explain Guilford's recantation and inconsistent statements.  Accordingly, the PCRA court found no hearsay violation.  The Superior Court affirmed.  The magistrate judge determines, however, that the state court

---

[13]        <u>Johnson v. Mechling</u>, 446 F. App'x 531, 538 (3d Cir. 2011) ("The applicable clearly established federal standard is set out by the Supreme Court in <u>Jackson v. Virginia</u>, 443 U.S. 307.").

decisions were based on an unreasonable determination of the facts because all of Guilford's prior inconsistent statements were admitted for their truth pursuant to a jury instruction.  In that instruction, the jury was told, "if there is an inconsistency between what the witness said at an earlier time and on the stand, those statements may be used as substantive evidence to prove the truth of the matters asserted in that statement."  The trial court specifically noted that "there were certain earlier statements of Steven Guilford."  Considering this instruction, the magistrate judge concludes that the state courts' findings were unreasonable.  Viewing the claim de novo, the magistrate judge determines that while Petitioner's statements to Victor Ragan would have been admissible as party-opponent statements, Victor Ragan's statements to Guilford were hearsay. The magistrate judge also concludes that Victor Ragan's statement to Guilford violated the Confrontation Clause of the Fifth Amendment.  The magistrate judge rejects the Commonwealth's argument that trial counsel acted pursuant to reasonable trial strategy by not objecting because the statements show Petitioner did not intend to kill Thomas.  The magistrate judge finds that an unintentional killing was not consistent with defense strategy that Petitioner was not the shooter.  He reasons that a limiting instruction was essential.  Nevertheless, the magistrate judge concludes that considering the properly admitted evidence against Petitioner, the admission of Petitioner's inculpatory statements to Victor Ragan did not have a pervasive effect on the trial, and there was no prejudice.  The magistrate judge recommends that the claim be denied but that a certificate of appealability be issued.

In his objections, Petitioner asserts that he was prejudiced by the statements because the jury heard his brother testify that he was indeed the shooter and that he "doesn't care if he has to do life, he'll do life."  He submits that the latter comment negates the good character evidence offered by the defense.  Petitioner submits that confessions are one of the most damaging

evidence that can be admitted, citing <u>Ariz. v. Fulminante</u>, 499 U.S. 279, 296 (1991) ("A confession is like no other evidence. Indeed, the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him.") (internal quotations omitted). He notes the absence of physical evidence or eyewitness testimony, and asserts that if counsel had objected to the introduction of the statements, there is a reasonable probability the jury would have had reasonable doubt as to his guilt.

The Commonwealth responds that counsel was not deficient because, as the state courts concluded, the statements were not being offered for the truth of the matter asserted, but to explain the inconsistencies in Guilford's testimony. Thus, in the absence of a valid basis to object to the testimony, counsel was not ineffective. See <u>Werts v. Vaughn</u>, 228 F.3d 178, 203 (3d Cir. 2000) (explaining that "counsel cannot be deemed ineffective for failing to raise a meritless claim"). The Commonwealth suggests that trial counsel was also acting strategically in not seeking a limiting instruction because the trial court's instruction did not mention Victor Ragan's statements, and seeking a cautionary instruction would redirect the jury's attention to the statements. See <u>Buehl</u>, 166 F.3d at 170 (holding that counsel may reasonably conclude that it is strategically preferable not to request a cautionary instruction because it could "have the undesired effect of highlighting the other crimes evidence."). Also, Victor Ragan's apology to Guilford, that Petitioner did not mean to kill Thomas, was useful to the defense because it gave the jury an alternative to finding first degree murder without putting Petitioner on the witness stand.

Applying the "difficult to meet" and "highly deferential standard," which "demands that state-court decisions be given the benefit of the doubt" and "forbids federal courts to second-guess the reasonable decisions of state courts," see <u>Cash v. Maxwell</u>, 132 S. Ct. 611, 613 (2012),

the Court finds that the state courts' decisions were not contrary to federal law, nor were they based on an unreasonable determination of the facts.  The prosecutor's questions were not intended to elicit hearsay testimony.  Rather, the prosecutor was questioning Guilford about whether Victor Ragan made threats to him that may have caused him to change his story.  Petitioner acknowledges the same in claim III.  Accordingly, the statements were not being offered for the truth of the matter asserted and were not hearsay.  See Robles v. Lewis, No. CV 13-7693-CW, 2015 U.S. Dist. LEXIS 164439, at *75-76 (C.D. Cal. Dec. 7, 2015) (overruling the defendant's objections based on hearsay, due process, and the right of confrontation because the evidence of intimidation was being admitted as relevant to evaluating the witness's credibility, not for the truth asserted); Commonwealth v. Johnson, 838 A.2d 663, 680 (Pa. 2003) (admitting the defendant's statements, which were intended to influence a witness's testimony at trial, through a non-declarant listener as a form of non-hearsay because they were "not offered to establish the truth of the matter asserted (here, for example, that people's families die), but rather, to demonstrate the fact of the attempted influencing").

The trial court's instruction did not change the nature of the statements and did not apply to Victor Ragan's statements.  Rather, the instruction discussed "certain earlier statements of Steven Guilford, Varsella Guilford and Sherri Ford" and advised the jury that their out of court statements "were shown to you for two purposes. One of the purposes of bringing out statements taken outside the courtroom on other occasions was to enable you to decide if the witness on the stand was being truthful during the testimony on the stand," and "if there is an inconsistency between what the witness said at an earlier time and on the stand, those statements may be used as substantive evidence to prove the truth of the matters asserted in that statement." N.T. 7/9/91 at 22.  The instruction made clear that it was only (1) certain earlier statements that were (2)

inconsistent with statements made in court by (3) testifying witnesses that could be used to prove the truth of the matter asserted. None of these factors apply to the challenged statements of Petitioner to Victor Ragan that were admitted through Steven Guilford.

The state courts' findings that Guilford's trial statements were not hearsay because they were not offered for the truth of the matter asserted is not unreasonable, nor contrary to law. See Fed. R. Ev. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."). Victor Ragan's statements were also not hearsay because they were admissible as a party-opponent statement. See Fed. R. Ev. 801(d)(2) ("A statement that meets the following conditions is not hearsay: . . . The statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity."). Additionally, there is nothing to suggest that Petitioner's statement to his brother was "testimonial;" therefore, the Confrontation Clause is not implicated. See United States v. Jimenez, 513 F.3d 62, 76 (3d Cir. 2008) (holding that "nontestimonial statements do not violate the Confrontation Clause" (citing Crawford v. Washington, 541 U.S. 36, 53 (2004))). See also Waller v. Varano, 562 F. App'x 91, 94-95 (3d Cir. 2014) (determining that a co-defendant's statement to his cousin "that he had recently been involved in a crime is plainly nontestimonial under Crawford"). Consequently, trial counsel was not ineffective for failing to raise a meritless objection. See Waller v. Varano, No. 10-2029, 2012 U.S. Dist. LEXIS 187711, at *25 (E.D. Pa. Nov. 19, 2012) (concluding that the petitioner's Confrontation Clause claim was without merit and that trial counsel could not have rendered ineffective assistance in failing to raise an objection to a nontestimonial statement), adopted by 2013 U.S. Dist. LEXIS 54400 (E.D. Pa. Apr. 8, 2013), aff'd by 562 F. App'x 91 (3d Cir. 2014). Having determined that trial counsel

26

was not ineffective, the Court adopts only the magistrate judge's recommendation that this claim be dismissed. The Court also agrees that a certificate of appealability should be issued.

### F.      Petitioner's Claim VI – Prosecutorial Misconduct in Closing Remarks

The magistrate judge determines that trial counsel was not ineffective for failing to object to the prosecutor's summation because, contrary to Petitioner's claim, the prosecutor did not improperly shift the burden of proof. R&R 47-48. Rather, the prosecutor's statement, about making a witness available for trial and "let the party whose interest it serves be the one to call him" to testify, was in response to defense counsel's closing argument that the District Attorney brought the witness to court from the Netherlands but "we never heard from" him. The magistrate judge agrees with the state court's denial of this claim and notes the trial court's instructions on this point. Petitioner does not object to these findings. The Court finds no plain error and adopts the magistrate judge's findings and recommendations as to Petitioner's sixth claim.

### G.      Petitioner's Claim VII – Malice Instruction

The magistrate judge finds that the state court's rejection of Petitioner's claim that his counsel was ineffective for not objecting to the trial court's malice instruction is not contrary to federal law because the alleged error did not infect the entire trial with unfairness. R&R 48-49. After review of the record and the single sentence to which Petitioner assigns error to the trial court, the Court concludes that there is no plain error in the magistrate judge's decision and it is adopted.

### H.      Petitioner's Claim VIII – Cumulative Error

The magistrate judge determines that because Petitioner failed to raise a cumulative error challenge in his PCRA petitions, he has procedurally defaulted the claim. R&R 50. For the

reasons previously discussed, the magistrate judge concludes that Petitioner failed to show actual innocence or prejudice to excuse his default.

Petitioner contends that the magistrate judge erred in finding that he did not raise a cumulative error claim in his PCRA pleadings.  He asserts that PCRA counsel raised a number of ineffectiveness claims and argued the cumulative prejudice of these claims, quoting 12/16/96 PCRA Pet. at ¶ 5.  Petitioner further submits that determining prejudice with respect to ineffective assistance of counsel claims requires the court to assess the cumulative impact of counsel's errors.  He challenges the magistrate judge's reliance on Collins v. Sec'y of the Pa. Dep't of Corr., 742 F.3d 528 (3d Cir. 2014).  Finally, Petitioner asserts that Martinez would excuse any procedural default.

In his objections to the R&R, Petitioner states that he "simply asks the Court to cumulate the prejudice of two ineffective assistance of counsel claims – an approach endorsed by the United States Supreme Court in Strickland."  Pet.'s Objs. 22.  He alleges that this claim, asserting only the cumulative errors by counsel's ineffectiveness, was raised in the PCRA petition.  As such, he avers the claim is not procedurally defaulted and that the magistrate judge's reliance on Collins, wherein the petitioner asked the court to cumulate the prejudice of three completely different types of claims: an ineffective assistance of counsel claim, confrontation claim, and due process claim, is misplaced.

The Court finds that Petitioner's contention is contrary to the Amended Habeas Petition, which asserted that "relief based upon a finding of cumulative prejudice is particularly appropriate given the suppression of key evidence, the stream of prosecutorial misconduct, and the overall weakness of the Commonwealth's case against Petitioner when the improper and inadmissible evidence is stripped from the record."  Am. Habeas Pet. 100.  Accordingly, the

28

magistrate judge's reliance on Collins is not misplaced.  In Collins, the court determined that the cumulative error claim was procedurally defaulted because the petitioner had not presented it to the Pennsylvania Supreme Court as an individual claim for relief.  See Collins, 742 F.3d at 542-43.  Similarly here, Petitioner failed to present a standalone cumulative error claim and has defaulted this claim.  For the reasons discussed herein, the Court rejects Petitioner's attempt to excuse his default based on Martinez.  See Murray v. Burns, No. 13-cv-1772, 2014 U.S. Dist. LEXIS 147632, at *34-35 (E.D. Pa. Aug. 26, 2014) (determining that the petitioner did not exhaust a cumulative error claim in the state courts and that there was no basis to excuse this procedural default pursuant to Martinez), adopted by 2014 U.S. Dist. LEXIS 146732 (E.D. Pa. Oct. 14, 2014); Moats v. Folino, No. 12-1331, 2015 U.S. Dist. LEXIS 160145, at *26 (W.D. Pa. Nov. 30, 2015) (explaining that "the Martinez exception applies only to claims of ineffective assistance of trial counsel where the errors or absence of post-conviction counsel caused a default of those claims at the initial-review post-conviction proceeding").  Therefore, the magistrate judge's finding that the claim should be denied as procedurally defaulted is adopted.

## I.      Certificate of Appealability

The Magistrate Judge recommends that the Amended Habeas Petition be dismissed with prejudice on all but two claims: (II) trial counsel's ineffectiveness for failing to investigate and call Martino Crews as a witness; and (V) trial counsel's ineffectiveness for failing to object to Victor Ragan's hearsay statements.

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'"  Tomlin v. Britton, 448 F. App'x 224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)).  "Where a district court has rejected the

constitutional claims on the merits, . . . the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.

Despite the magistrate judge's recommendation that claim II(B) be denied on the merits, the Court determines that the claim, relating to trial counsel's ineffectiveness for failing to interview and call Martino Crews, is procedurally defaulted.  However, out of an abundance of caution, the Court issues a certificate of appealability.  Additionally, a certificate of appealability is issued as to claim III(2), asserting prosecutorial misconduct in the questioning of Varsella Guilford and claim (V), alleging trial counsel's ineffectiveness for failing to object to Victor Ragan's hearsay statements.

## V.    **CONCLUSION**

For the reasons set forth herein, the R&R is adopted in part.  The petition for writ of habeas corpus is denied with prejudice as to all claims, except claims II(B), III(2), and V, and a certificate of appealability is issued as to these claims.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge

30